THE CITY OF CHICAGO, Appellee, *vs.* LEON MANDEL *et al.* Appellants.

*Opinion filed April 23, 1909.*

1. SPECIAL ASSESSMENTS—*the Park act of 1869 does not deprive city of power to improve streets adjoining park.* Section 5 of the supplemental South Park act did not, *ipso facto,* divest the city of Chicago of power to improve, by special assessment, streets running longitudinally along and adjoining the proposed parks or parcels of land designated in the original act, and in order to divest the city of such power, jurisdiction for that purpose must have been assumed by the park commissioners.

2. SAME—*what does not show that park commissioners have assumed jurisdiction over street.* The fact that park commissioners prepared specifications for the improvement of the roadway of a street adjoining park territory, advertised for bids and inspected the work does not show that they assumed jurisdiction for the purpose of improving the street, where it appears the improvement was made with the consent of the board of local improvements of the city and that the commissioners paid the expense of improving that half of the street adjoining their territory on the basis of an abutting owner.

3. EVIDENCE—*when printed copies of reports are not admissible.* Printed copies of certain reports of park commissioners are not admissible in evidence over an objection that they are not the best evidence and that a proper foundation for their admission has not been laid, where the secretary of the board testifies that he has charge of the records and does not know where the original reports are or whether they are in existence, but that he has not made any search for them.

APPEAL from the County Court of Cook county; the Hon. D. T. SMILEY, Judge, presiding.

JOSEPH H. FITCH, R. S. THOMPSON, and WILLIAM J. DONLIN, for appellants:

Section 5 of the amendment approved April 16, 1869, to the South Park act, gives to the South Park Commissioners the same jurisdiction to improve and maintain streets running longitudinally along and adjoining the Midway

Plaisance as they have over the parks themselves.    1 Private Laws of 1869, p. 366, sec. 5; *Chicago* v. *Carpenter,* 201 Ill. 402.

The original South Park act describes the strip of land now known as the Midway Plaisance as bounded on the north by the south line of Fifty-ninth street and on the south by the north line of Sixtieth street.    1 Private Laws of 1869, p. 366, sec. 4; *Adcock* v. *Chicago,* 172 Ill. 24.

Where the South Park board has assumed control of any part of such a street, the jurisdiction of the city of Chicago to improve it, by special assessment or otherwise, is at an end.    *Chicago* v. *Carpenter,* 201 Ill. 402.

The evidence of control by work done and paid for out of park funds is not rebutted by letters passing between subordinate officials having no authority to bind or speak for either the park board or the city of Chicago.    The board of local improvements could not agree that any improvement shall or shall not be made.    *Cosgrove* v. *Chicago,* 235 Ill. 358.

If the park board itself cannot bind the city of Chicago, *a fortiori* the secretary of such board cannot.    1 Am. & Eng. Ency. of Law, (2d ed.) 975.

The letters offered in evidence do not even purport to be written by authority of the city or the South Park board, and were clearly inadmissible to show any consent or agreement by either of such municipalities.

The printed report kept on file by the secretary of the park board was admissible, independently of statute, as a "chronicle of public history."    1 Greenleaf on Evidence, sec. 497.

It was proved to be a duplicate of the printed report made to the board of county commissioners, as required by statute.    Hurd's Stat. chap. 105, sec. 5.

Being an official duplicate, proof of the loss of the original was unnecessary.

GEORGE A. MASON, and WILLIAM T. HAPEMAN, (ED-
WARD J. BRUNDAGE, Corporation Counsel, of counsel,) for
appellee:

The presumption is that the city has acquired the land
necessary for the proposed improvement. The burden then
shifts to the objectors to overcome this presumption. Local
Improvement act of 1897, secs. 9, 53; *Wells* v. *Chicago,*
202 Ill. 448; *Snydacker* v. *West Hammond,* 225 id. 154;
*Watts* v. *River Forest,* 227 id. 31; *Litz* v. *West Hammond,*
230 id. 310; *East St. Louis* v. *Davis,* 233 id. 553.

The original and amendatory South Park acts do not,
*ipso facto,* confer jurisdiction upon the commissioners over
longitudinal streets bordering park lands. The jurisdiction
must be assumed by the commissioners, and evidence of
such assumption must be clear and unequivocal. Private
Laws of 1869, pp. 358, 366; *Adcock* v. *Chicago,* 172 Ill.
24; *Chicago* v. *Carpenter,* 201 id. 402.

The letters, contracts and other evidence show the posi-
tion of the South Park Commissioners and the city upon
the question of jurisdiction. The printed copies of the an-
nual reports of the commissioners were properly excluded.
*Cicero* v. *Green,* 211 Ill. 241; *Park Comrs.* v. *Baldwin,* 162
id. 87; *Park Comrs.* v. *Chicago,* 152 id. 392.

Mr. JUSTICE FARMER delivered the opinion of the court:

This is an appeal from the county court of Cook county
confirming a special assessment for the improvement of the
roadway of the north half of Fifty-ninth street, in the city
of Chicago, from Jackson Park avenue to Washington ave-
nue, except the subway under the right of way of the Illi-
nois Central railroad, a distance of two blocks. Appellants
filed objections to the confirmation of the assessment, and
the cause was heard by the county court on what are termed
legal objections only. At the hearing all objections filed
were abandoned, except the objection that the city of Chi-
cago had no jurisdiction or authority to improve the street

in question, but that the jurisdiction and authority to improve it were vested in the South Park Commissioners. After hearing the evidence of the respective parties offered under this objection the court overruled said objection and rendered judgment in favor of the petitioner. This appeal is prosecuted by the objectors from that judgment.

Fifty-ninth street extends east and west from Jackson Park to Washington Park, a distance of about one mile. Adjoining it immediately south is the Midway Plaisance, which is a part of the South Park system and extends in width from the south line of Fifty-ninth street to the north line of Sixtieth street and in length from Jackson Park to Washington Park. The special assessment objected to was levied for the improvement of the roadway of the north half of Fifty-ninth street in front of the two blocks at the east end of said street.

Appellants contend that under section 5 of the supplemental South Park act of April 16, 1869, Fifty-ninth street was placed under the jurisdiction and control of the park commissioners, and that by their acts in improving said street they have assumed the exercise of jurisdiction and control over it. Said section 5 reads as follows: "The commissioners to be appointed under said act are hereby vested with the same powers and duties as are conferred by said act in relation to lands designated for parks, over all streets running longitudinally along and adjoining any and all of the proposed parks, or strips of land designated in said original act, as are conferred by said act in relation to such parks and strips of land, as may be necessary to improve and keep in repair the same, in connection with the said parks or strips of land without obstructing the fences or other structures, free access to the said streets from existing roads and streets and by owners of land abutting on the same."

Reliance is placed by appellants upon *City of Chicago v. Carpenter,* 201 Ill. 402. That case involved the validity of

a special assessment made by the city of Chicago for improving the east half of Cottage Grove avenue from Drexel square to Fifty-ninth street. The park commissioners had assumed jurisdiction and control over the improvement of the street in question in that case, and had improved portions of it and paid the cost thereof out of park funds in the hands of the commissioners. The court said (p. 408): "There is no evidence in this record that the improvements referred to were made with the city's consent, and without such proof we think the presumption is they were constructed and paid for by the park commissioners by virtue of the powers conferred upon them by law, and not of their own wrong or as abutting owner, and the improvements having been made without interference on the part of the city, it is estopped to deny the jurisdiction and control of the park commissioners over said avenue."

Upon the authority of that case and *Adcock* v. *City of Chicago,* 172 Ill. 24, the law is established that the passage of the supplemental Park act referred to did not, *ipso facto,* divest the city of Chicago of the power and authority to improve the surface of Fifty-ninth street and vest such power and authority in the South Park Commissioners. To deprive the city of Chicago of its authority, jurisdiction and control of the street for its improvement, jurisdiction and control for that purpose must be assumed by the park commissioners. The question for determination in this case, therefore, is essentially one of fact, viz., did the South Park Commissioners, prior to the levying of the special assessment objected to, assume jurisdiction and control over the improvement of Fifty-ninth street between Washington and Jackson Parks?

After making a *prima facie* case by introduction of the formal proofs required, appellee rested, and appellants introduced Linn White as a witness, who testified he was a civil engineer employed by the South Park Commissioners and had been connected with that board four and one-half

years. The witness testified that during said four and one-half years the park board had not, to his knowledge, exercised any jurisdiction over Fifty-ninth street, but that the records of the board showed that in 1902 and 1903 it paved the south half of Fifty-ninth street between Cottage Grove avenue and Washington avenue. Peter Kaust, a witness for appellants, testified that he was a gardener and had been in the employment of the South Park Commissioners since 1873; that in 1875 or 1876, under the directions of said park board, he set out trees on both the north and south sides of Fifty-ninth street. Objectors also offered a printed book purporting to contain annual reports made by the South Park Commissioners to the county commissioners of Cook county for the years 1875 to 1906, inclusive. The particular reports printed in said book and offered in evidence were those made for the years 1875 and 1876. Copies of these reports are not embraced in the abstract nor in the record, and we have no means of knowing what said reports contained, except from the statements of counsel. Appellants' counsel say in their brief that the printed copy of the report for the year 1875 showed that in that year the park board graded and graveled the roadway of Fifty-ninth street, and the printed copy of the report for 1876 showed that in that year the park board planted trees on both sides of the street and paid out about $1000 for labor on said street. Appellee objected to the printed copies of the reports on the ground that they were not the best evidence and that no foundation had been laid for the introduction of secondary evidence. Edward G. Shumway, secretary of the park board, testified he had charge of the records of the board; that he did not know where the original reports, of which those printed in the book were copies, were; that the custom of the board was to send the original to the printer, and when it was printed sometimes the original was returned and sometimes it was not. He further testified that he did not know where the original reports for 1875 and

1876 were; that they were not in existence to his knowledge, but that he had not made any search for them. We think the court properly sustained appellee's objection to the introduction of the printed copies offered.

On behalf of the appellee, Shumway, secretary of said board, produced as a part of the records and files of said board certain letters and contracts relating to the improvements made in Fifty-ninth street. Some of this correspondence consists of letters written by John A. May, secretary of the board of local improvements, to J. F. Foster, superintendent of South Park; Foster's reply thereto; letters from property owners on the north side of said street to said Foster; letters from J. F. Hittel, engineer of the board of local improvements, to Foster, and his reply thereto; and other letters from property owners, or parties representing property owners, to representatives of the board of local improvements or park commissioners. One of the contracts offered in evidence was between Dolese Bros. Company and the park board. It was dated August 30, 1902, and provided for the grading, paving, curbing and draining of the south half of the driveway of Fifty-ninth street, from Cottage Grove avenue to Madison avenue, in accordance with the specifications attached. The other contract was dated April 25, 1903. It was between James Lyman & Co. and the park board, and provided for the same character of improvement of the south half of said street from Madison avenue to the east line of Washington avenue.

We do not deem it necessary to set out the substance of the letters introduced in evidence. In so far as they were written by anyone having authority to speak for either the park commissioners or the board of local improvements, they tend to show that the improvements made in Fifty-ninth street in 1902 and 1903 by the park board were made by a mutual understanding, agreement and consent between the board of local improvements and the park board. Shumway testified that the improvements made by the prop-

erty owners on the north side of the street were consented to by the board of local improvements; that said board consented to the property owners letting their own contracts for the paving; that the park commissioners prepared the specifications for the whole improvement, advertised for bids and inspected the work, which was done throughout the whole width of the roadway at the same time. The paving of the south half of the street was paid for by the park board out of its funds.

While it is true the board of local improvements has not the authority to order an improvement, we think where it does authorize an improvement to be made and the same is made and acquiesced in by the city, the city is bound by such action. At all events, the action of the board of local improvements is of some importance in determining whether the park board, in doing what it did, intended to assume jurisdiction over the street, or whether it intended to act only upon the theory that it was a property owner on the south side of the street. Shumway testified he had been connected with the park board since 1894, and that during all that time it had been the policy of the board to occupy the position of a property owner and join in improvements made. This is in harmony with the testimony of White, the engineer of the park board, a witness for the appellants, who testified that he had been connected with the park board four and one-half years, and that during all that time the board had not exercised any jurisdiction over Fifty-ninth street. None of the acts of the park board shown by the evidence are inconsistent with the claim that in improving the street it did not intend to assume jurisdiction over the street, but to contribute, upon the basis of an abutting property owner, a proportionate share of the cost.

We think under the evidence the court correctly confirmed the special assessment, and the judgment is affirmed.

*Judgment affirmed.*